IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

GEORGE FRANKLIN WALKER, JR.,

      Plaintiff,

v.                                                        CASE NO. 1:16-cv-383-WTH-GRJ

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals from a final decision of the Commissioner of Social

Security ("the Commissioner") denying his application for a Period of

Disability and Disability Insurance Benefits under Title II of the Social

Security Act. (ECF No. 1). The Commissioner has answered (ECF No. 8),

and both parties have filed briefs outlining their respective positions. (ECF

Nos. 17 & 18).  For the reasons discussed below, the Commissioner's

decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff filed his applications for disability and supplemental income

benefits on January 12, 2012, alleging a disability onset date of June 18,

2011, due to gout and anxiety. (R. 220.) Plaintiff's applications were denied

initially and upon reconsideration. (R. 94–97, 126–46.) An administrative

law judge ("ALJ") conducted a hearing on December 17, 2013, and entered

a partially favorable decision on January 16, 2014. (R. 98–117.) The

Appeals Council granted Plaintiff's request for review, vacated the ALJ's

decision, and remanded the case for further proceedings on November 9,

2015.  (R. 119–23.)

At a second hearing on May 26, 2016, Plaintiff amended the alleged

onset date of disability to July 29, 2013. (R. 13.) Following the hearing, the

ALJ issued an unfavorable decision on June 22, 2016, denying Plaintiff's

claim. (R. 29–44, 9–28.) The Appeals Council denied Plaintiff's subsequent

request for review on October 28, 2016. (R. 1–3.) Plaintiff then filed the

complaint in this case on December 27, 2016. (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by

substantial evidence. *See* 42 U.S.C. § 405(g) (2000). Substantial evidence

is more than a scintilla, i.e., the evidence must do more than merely create

a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the

conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing

*Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v.*

*Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971));

*accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42

U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505 (2005).[1] The impairment

must be severe, making Plaintiff unable to do his previous work, or any

other substantial gainful activity which exists in the national economy. 42

U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The ALJ must follow five steps in evaluating a claim of disability. 20

C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the

existence of a disability as defined by the Social Security Act. *Carnes v.*

*Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is

working at a substantial gainful activity, he is not disabled. 20 C.F.R. §

404.1520(b). Second, if a claimant does not have any impairment or

combination of impairments which significantly limit his physical or mental

ability to do basic work activities, then he does not have a severe

impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a

claimant's impairments meet or equal an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d).

Fourth, if a claimant's impairments do not prevent him from doing past

relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a

claimant's impairments (considering his residual functional capacity

---

[1] All further references to 20 C.F.R. will be to the 2005 version, unless otherwise specified.

("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III.  SUMMARY OF THE RECORD

Plaintiff's medical records cover the time period from 2009 to 2015 and are from Helping Hands Clinic, the Alachua County Health Department, and Shands. Because Plaintiff's arguments on appeal relate to his gout and anxiety, the relevant portions of the medical record, hearing testimony, and the ALJ's findings are summarized below.

### A.  Medical Evidence

Because Plaintiff amended his alleged onset date at the hearing to July 29, 2013, the majority of his medical records are from prior to this alleged onset date.

Plaintiff's records from Helping Hands Clinic from August 2009 through January 2012 reveal treatment for diabetes and high blood pressure, but there is no mention of gout or anxiety. Additionally, his records from June 6, 2011, state "no edema." (R. 326–32.)

His records from the Alachua County Health Department from February 2010 to February 2012 reveal findings of gout, but his physical examinations do not support the severity of his complaints. In February and

March 2010 Plaintiff had no edema in any of his extremities. Then on June 18, 2010, Plaintiff complained of intermittent episodes of right ankle pain and stated that he "was told he had gout at [the emergency room] years ago." On examination he did not have any swelling or erythema in the ankle. Then in July 2010 he was doing well. On October 14, 2010, Plaintiff complained of difficulty performing his job due to gout episodes and stated he had occasional leg numbness, but he presented in no acute distress and had no evidence of edema. (R. 333–59.)

On September 13, 2012, Plaintiff visited the Shands Emergency Department and was diagnosed with a gout flare. The only treatment notes show that Plaintiff was prescribed medication. (R. 403.)

Plaintiff returned to Helping Hands from 2013 until June 2015. In June 2013 Plaintiff complained of very painful gout, and the treating physician noted that Plaintiff complained that his medication was not helping and that his gout was preventing him from working. On exam he had mild stiffness, tenderness, and swelling of the right ankle, and the record discloses exacerbation of chronic gout. His medication was then switched. By July, however, there was no mention of gout, and Plaintiff complained of difficulties working due to breathing issues. In September 2013 Plaintiff presented for gout medication refills and told doctors he had

"a few" gout flares in the last month.  In October he told medical personnel that he had gout flares two times per week, but he stated that shortness of breath, not gout, impacted his ability to work. By December 2013 Plaintiff reported no flares in gout. (R. 396–402, 418–20.)

In early 2014 Plaintiff reported doing well. His gout was well controlled and he said he had no acute flares in pain in the past year. In June 2014 Plaintiff complained that his gout medication was not working and complained of itchy feet, but in early July 2014 Plaintiff's gout was controlled. Later that month Plaintiff was seeking prescriptions for gout and complaining of edema in his legs and swollen feet as well as pain. The doctor, however, told Plaintiff that his pain is not gout. In September 2014 Plaintiff stated he has "chronic gout" and complained of recent upper extremity gout. But by May and June 2015, there is only mention of prescription refills for gout but not severe complaints of pain. Plaintiff did complain of ankle swelling in May, and in June edema was noted on lower extremities, but Plaintiff requested foot cream for itchy and peeling feet. (R. 407–20.)

## B.  Opinion Evidence

### 1. Dr. Chodosh

Dr. Chodosh performed a consultative examination on Plaintiff in

April 2012. Plaintiff's chief complaints were diabetes, high blood pressure, gout, schizophrenia, and a heart condition. Regarding gout, Plaintiff complained of suffering from gout for approximately three years and stated he has almost constant pain in his ankles, toes, and hands. Additionally, Plaintiff complained of poor stamina, general weakness, and aches and pain that interfered with his ability to work. (R. 364.)

During the physical examination of Plaintiff, Dr. Chodosh noted that there was no edema, cyanosis, clubbing, deformity, or varicosity in his extremities. Additionally, Plaintiff's range of motion was normal in the majority of the areas recorded. He also had grossly normal motor function in all four extremities with strength judged as 5/5, as well as normal manual dexterity and good coordination. Plaintiff also had normal standing balance and gait, and he was able to squat and rise. (R. 360–67.)

Dr. Chodosh's impressions were diabetes without apparent complications, hypertension without obvious complications, and a history of gout, noting that he did not find signs of advanced gouty arthritis. He concluded that Plaintiff was able to stand, walk, sit, stoop, squat, kneel, lift, carry, handle objects, see, hear, and speak normally. (R. 360–67.)

### 2. Dr. Humphreys

Dr. Humphreys, a counseling psychologist, completed a

psychological consultative examination in May 2012. With regard to

behavioral observations and mental status, she noted that Plaintiff had a

depressed mood and a variable and expressive affect. However, the other

findings were largely unremarkable. (R. 368–69.)

Dr. Humphreys concluded that Plaintiff suffered from an anxiety

disorder, not otherwise specified. She found that Plaintiff's issues with

concentration and memory may impact his ability to carry out complex

instructions, but that his remote memory was grossly intact. She found that

Plaintiff appeared mentally capable of performing simple, repetitive tasks,

but his anxiety may affect his social skills and judgment. (R. 369–70.)

### 3. Dr. Palmer

Dr. Palmer, a state agency consultant, completed a physical residual

functional capacity assessment in May 2012. He found that Plaintiff could

lift up to 50 pounds occasionally and 25 pounds frequently. He noted that

Plaintiff could sit for up to 6 hours and could stand and walk for 6 hours,

with regular breaks, in an 8-hour workday. Plaintiff also had an unlimited

ability to push and/or pull. Dr. Palmer also found that Plaintiff had

environmental limitations, such as avoiding concentrated exposure to

fumes, odors, dusts, gases, poor ventilation, etc., and hazards. (R.

379–81.)

### 4. Dr. Deboskey

In May 2012, Dr. Deboskey, a state agency consultant, assessed Plaintiff. She stated that Plaintiff had no restrictions in activities of daily living, but he did have mild restrictions in social functioning, concentration, persistence, and pace. (R. 377–78.)

## C.  Hearing Testimony

At the hearing on May 26, 2016, Plaintiff was 59 years old, and he testified that from 1983 through 2008 he worked in construction, initially as pave crew and then as paving machine operator. (R. 29–33.)

Plaintiff also testified about his diabetes and the pain and swelling caused by his gout. He said that his toes and ankles swell, he cannot stand for a long period of time, and his legs hurt. He also testified that he needs to elevate his ankles when he is sitting to keep the blood flowing, which he said he does 3 hours a day. Plaintiff further testified that the gout has also caused joint pain in his elbow and fingers, which prevents him from being able to lift items and causes him to drop things often. (R. 35–40.)

A vocational expert ("VE") also testified. The first hypothetical the ALJ provided to the VE was as follows:

> [I]f we start with an individual the claimant's age, education, the past work as he described it for us. Individual limited to work at medium exertion level with occasional climbing of ramps and stairs but no climbing of ladders, ropes and scaffolds, and occasional balance, stoop, kneel, crouch, crawl, no more than frequent handling on both sides, no concentrated exposure to extremes of heat, cold or respiratory irritants such as dust, fumes, and gases. Mentally limited to performing simple tasks with no variation that take a short period of time to learn that be up to and including 30 days, able to deal with changes on a routine work setting, socially able to relate adequately with supervisors but only to occasional coworker and no general public contact. Would that individual be able to do the past work or the claimant?

The VE said that the hypothetical individual could not perform Plaintiff's past work as it was skilled or semi-skilled. The VE did testify that the hypothetical individual could perform other positions, including a stocker, a kitchen helper, and a cleaner. (R. 41–42.)

The ALJ then posed a second hypothetical to the VE, which was as follows:

> [I]f we take the individual from the first and add to it that the individual would be expected to be off task during [the] workday for at least 20% of the workday and as – that would be at unpredictable intervals and outside the normally permitted breaks, which I understand to be the two 15-minute breaks, one 30-minute break. What effect would that have on the job instances?

The VE responded that 20% off-task behavior would not be acceptable in any job setting and employers would not tolerate more than one absence per month. (R. 42.)

## C.  The ALJ's Findings

The ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of July 29, 2013, through his date last insured of March 31, 2014. Further, the ALJ found that Plaintiff has the following severe impairments: diabetes mellitus, hypertension, asthma, gout, and anxiety disorder. However, none of these impairments or a combination thereof meets or medically equals the severity of one of the listed impairments. (R. 15.)

Based on a review of the entire record, the ALJ concluded that through the date Plaintiff was last insured Plaintiff had the residual functional capacity ("RFC") to perform medium work with limitations. Specifically, he found that Plaintiff "is limited to occasional climbing of ramps and stairs, and never climbing ladders, ropes, or scaffolds. [Plaintiff] can occasionally balance, stoop[], kneel, crouch, and crawl. He is limited to no more than frequent handling with his bilateral upper extremities." He further found that Plaintiff can have no concentrated exposure to extreme

heat, extreme cold, or respiratory irritants. Additionally, the ALJ found that Plaintiff may perform only simple tasks, with little variation, that take no more than 30 days to learn. He concluded that Plaintiff can deal with changes in a routine work setting and relate with supervisors, but he can only have occasional contact with coworkers and no contact with the general public. (R. 17.)

The ALJ then found that through the date last insured, Plaintiff was not capable of performing past relevant work, but there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed. Specifically, Plaintiff was capable of working as a stocker, a kitchen helper, or a cleaner. Ultimately, the ALJ concluded that Plaintiff was not under a disability, as defined in the Act, at any time from July 29, 2013, the alleged onset date, through March 31, 2014, the date last insured. (R. 23–24.)

## IV.  DISCUSSION

Plaintiff raises the following argument on appeal without any reference or citation to the record: substantial evidence does not support the ALJ's findings regarding Plaintiff's RFC. More specifically, Plaintiff argues that the ALJ erred in determining Plaintiff's RFC because (1) a

person with gouty arthritis cannot perform medium or light work, (2) as a result of the combination of Plaintiff's gouty arthritis and anxiety disorder he cannot perform medium work without two or more absences a month, and (3) Plaintiff cannot meet the productivity expectations of an employer because he would need excessive break and/or sedentary time. (ECF No. 17 at 27, 38–39.) Each argument is discussed in turn below.

**A.  Substantial evidence supports the ALJ's RFC determination, including the finding that Plaintiff can perform the six hours a day of standing required for medium work.**

Plaintiff first argues—without any support or citation to the record—that substantial evidence does not support the ALJ's RFC determination because "it is absurd to think that a person with gouty arthritis could possibly perform the six hours a day of standing required for medium or light work."  (ECF No. 17 at 38.) However, the Court finds that even in light of Plaintiff's gout, substantial evidence supports the ALJ's RFC finding, including that Plaintiff is capable of standing six hours a day.

With regard to Plaintiff's conclusory contention that a person with gouty arthritis is incapable of standing six hours a day, the evidence in the record proves otherwise. The ALJ has the responsibility of determining a Plaintiff's RFC. *See* 20 C.F.R. §§ 416.946(c), 416.927(d)(2); *see also*

*Cooper v. Astrue*, 373 F App'x 961, 962 (11th Cir. 2010) (noting that "[t]he task of determining a claimant's ability to work is within the province of the ALJ, not a doctor"). Based on the evidence in the record, the ALJ determined that Plaintiff is capable of performing medium work with limitations.

In making this finding the ALJ first properly considered the medical evidence in the record. The ALJ found that although the medical evidence shows that Plaintiff suffered from gout flares and complained of pain and swelling as a result of his gout, Plaintiff's exam findings were generally normal other than some minor findings related to Plaintiff's lower extremities. Further, during the period at issue Plaintiff reported fewer gout flares and by January 2014 Plaintiff was doing well and the doctor noted that his gout was well controlled. Even the physical examination by the consultative examiner revealed normal findings, and the examiner noted that he did not see any signs of advanced gouty arthritis. Based upon this evidence ALJ concluded that there was not any substantial medical evidence that Plaintiff's gout produced any significant functional limitation, other than those limitations delineated in Plaintiff's RFC. (R. 18–22.)

The ALJ also properly considered all of the doctors' opinions in the

record regarding Plaintiff's physical condition. The opinions of treating

doctors are typically entitled to more weight, and an ALJ must explain why

the ALJ discounts a treating doctor's opinion. *See Winschel v. Comm'r of*

*Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Where the ALJ

determines that a non-examining physician's opinion is more strongly

corroborated by the record, however, the ALJ may rely on a non-examining

physician's opinion over that of an examining physician. *See Wilkinson v.*

*Comm'r of Soc. Sec.*, 289 F. App'x 384 (11th Cir. 2008). Additionally, "the

ALJ is free to reject the opinion of any physician when the evidence

supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835

(11th Cir. 1985) (quoting *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th

Cir. 1981)).

Although a doctor may provide an opinion about a plaintiff's

restrictions, the ALJ is ultimately responsible for determining the plaintiff's

RFC. *See Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486

(11th Cir. 2012) (noting that the ALJ determines the RFC, "and while a

physician's opinion on the matter will be considered, it is not dispositive").

The ALJ first addressed the opinion of Dr. Chodosh, one of Plaintiff's

consultative physical examiners. The consultative examination yielded

largely normal findings except for a reduced range of motion in the feet, lumbar spine, and hips. There was no swelling in Plaintiff's extremities, his motor function was grossly normal, and his gait and balance were also normal. Dr. Chodosh concluded that Plaintiff could stand, walk, sit, stoop, squat, kneel, lift, carry, handle objects, see, hear, and speak normally. The ALJ afforded this opinion great weight due to its consistency with the findings from the examination. The ALJ, however, assigned only little weight to Dr. Chodosh's finding that Plaintiff did not have any work restrictions because the record as a whole supports a reduced range of medium work. (R. 19–20.)

The ALJ next addressed the opinion of Dr. Palmer, a State agency consultant, who completed a physical residual functional capacity assessment. Dr. Palmer opined that Plaintiff could lift and/or carry up to fifty pounds occasionally and up to twenty-five pounds frequently. Plaintiff could also sit, stand, and walk for up to six hours in an eight-hour workday. The ALJ gave great weight to this opinion as it was consistent with the consultative examinations and the course of Plaintiff's treatment. The ALJ, however, found that Plaintiff needed additional postural, environmental, and manipulative limits. (R. 20–21.)

Although these opinions about Plaintiff's physical condition were from consultative examiners acting as state agency medical consultants who did not examine Plaintiff, the ALJ was permitted to give these opinions great weight if their opinions are supported by the record evidence and so long as the ALJ states with particularity the weight given and the reasons for doing so. *See* 20 C.F.R. §§ 404.1527, 404.1513a; *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 901–03 (11th Cir. 2012) ("The ALJ clearly articulated its reasons for giving significant weight to the consultative and non-examining physicians' opinions, when it stated that their opinions were more consistent with the medical evidence.") Therefore, to the extent the ALJ found these opinions were consistent with each other and with the objective medical evidence, the ALJ properly gave them significant and great weight. Further, to the extent the opinions differed from the medical evidence in the record, the ALJ properly accorded that portion of the opinion reduced weight.

In addition to the medical and opinion evidence in the record, the ALJ also considered Plaintiff's activities of daily living. Although Plaintiff's activities of daily living are not dispositive in making a disability determination, they may demonstrate that Plaintiff's allegations regarding

the limitations resulting from his impairments are not as severe as he argues. *See* 20 C.F.R. § 404.1529(c)(3); *Lanier v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 314 (11th Cir. 2007) ("The ALJ may consider a claimant's daily activities when evaluating her complaints of pain.").

The ALJ noted that some of Plaintiff's activities—such as preparing simple meals and performing light household chores— were inconsistent with his allegations of impairments. The ALJ also noted that Plaintiff has no problem taking care of his personal hygiene needs and regularly rides a bicycle to shop for groceries. While not dispositive, the ALJ correctly found that Plaintiff's activities are inconsistent with a total inability to work. (R. 22.)

In sum, the ALJ's RFC determination was based on a proper analysis of the medical and opinion evidence in the record and is supported by substantial evidence. Plaintiff's conclusory allegation that a person who has gouty arthritis cannot perform medium work because he cannot stand for six hours a day is not supported by the medical record. Plaintiff, therefore, failed to meet his burden of showing that he is disabled. *See* 20 C.F.R. § 404.1512(a).

**B. Substantial evidence supports the ALJ's findings that Plaintiff's combination of impairments do not render him disabled.**

Plaintiff next argues that substantial evidence does not support the ALJ's finding that Plaintiff had the RFC to perform a reduced range of medium work because "it is entirely credible that as a direct and proximate result of his combination of impairments (gouty arthritis and generalized anxiety disorder) he cannot be present and function in the workplace at the medium level of exertion eight (8) hours a day five (5) days a week" for a month without excessive absences. Plaintiff again does not cite any evidence in the record or provide any additional support for this conclusory allegation. (ECF No. 17 at 38.)  After reviewing the record the Court, concludes that substantial evidence supports the ALJ's RFC  determination even when considering the combination of Plaintiff's gout and generalized anxiety disorder.

Because (as discussed above) substantial evidence supports the ALJ's RFC determination with respect to Plaintiff's gout, the Court turns to whether substantial evidence also supports the ALJ's RFC determination with respect to Plaintiff's anxiety and whether the ALJ properly considered the combination of these impairments in making his RFC determination.

Like Plaintiff's gout, the ALJ properly considered all of the medical evidence in the record regarding Plaintiff's mental impairments. There is no evidence of mental health treatment in Plaintiff's medical records, and he has not required inpatient treatment or hospitalization for psychiatric reasons. The ALJ noted, based on the mental status examination by a consultative examiner, that Plaintiff's mental health issues were benign and that he only suffered from mild issues. the A Based upon this evidence (or lack thereof) the ALJ found that Plaintiff's anxiety did not produce any significant functional limitation, other than those delineated in Plaintiff's RFC through reducing Plaintiff's mental capabilities. (R. 22.)

The ALJ also properly considered all of the mental health opinion evidence in the record. Dr. Humphreys, a psychological consultative examiner, found that although Plaintiff's mood was depressed and his affect was variable and expressive, his thought process was logical and goal oriented, his thought content was normal, and his judgment and insight were good regarding hypothetical situations. Dr. Humphreys found that Plaintiff had anxiety disorder, not otherwise specified. She found that Plaintiff's concentration and recent memory may impact his ability to carry out complex instructions but that his remote memory was intact and he

could perform simple, repetitive tasks. Further, she found that Plaintiff's anxiety may affect his social skills and judgment. The ALJ afforded this opinion some weight as generally consistent with the evidence of record demonstrating that Plaintiff could perform simple tasks and have occasional contact with coworkers and no contact with the general public. (R. 21.)

The ALJ also discussed and considered the opinion of Dr. Deboskey, a State agency consultant. Dr. Deboskey opined that Plaintiff had no restrictions in activities of daily living and only mild restrictions in social functioning, concentration, persistence, and pace. Overall, she found Plaintiff's mental health impairment was non-severe. The ALJ gave this opinion great weight with regard to Plaintiff's restrictions in concentration, persistence, or pace, but found that the record does suggest that Plaintiff has a mental health impairment that causes moderate limitations in social functioning and daily living. (R. 21.)

Thus, as with the opinion evidence regard Plaintiff's physical impairments, to the extent the ALJ found the mental health opinions consistent with the objective medical evidence, the ALJ properly gave them significant and great weight. Where there were discrepancies between the

opinions and the objective medical evidence, however, the ALJ did not rely on the opinion evidence and found Plaintiff more limited than the opinion evidence suggested. (R. 21–22.)

In addition to the medical and opinion evidence in the record, the ALJ also considered Plaintiff's activities of daily living as explained above. Again, while not dispositive, the ALJ found that Plaintiff's activities are inconsistent with a total inability to work. The ALJ's findings regarding Plaintiff's daily activities were properly considered along with all of the other evidence. (R. 22.)

The ALJ not only considered Plaintiff's gout and generalized anxiety separately but also considered the combination of these impairments. (R. 15.) Ultimately the ALJ determined that the evidence does not support a worsening of Plaintiff's conditions or any long-standing restrictions in his functional abilities. The ALJ's RFC determination accurately reflects the evidence. (R. 22.)

For these reasons, the Court concludes that the ALJ's RFC determination was based on a proper analysis of all the evidence in the record regarding Plaintiff's physical and mental health impairments and, is supported by substantial evidence.

**C. Plaintiff's conclusory allegation that he cannot perform every day at the exertional level found by the ALJ due to gout flares fails to show that the ALJ erred in his RFC determination or that substantial evidence does not support the ALJ's RFC findings.**

Plaintiff lastly argues that substantial evidence does not support the ALJ's RFC finding that Plaintiff can perform a reduced range of medium work because "on days when he is experiencing a flare of gouty arthritis," "he would require to[o] much additional break time and/or sedentary time . . . to meet the productivity expectations of his employer." Plaintiff again does not cite to anything in the record or provide any additional support for this conclusory allegation. (ECF No. 17 at 39.)

As discussed at length above, substantial evidence supports Plaintiff's RFC determination. Further, it is Plaintiff's burden to prove disability, and his conclusory allegations about his inability to meet the productivity expectations of an employer every day due to flares in his gouty arthritis are insufficient to overcome the substantial evidence cited by the ALJ in finding that Plaintiff is capable of performing medium work with limitations.

## V. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the

decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** on the 2nd day of January 2018.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**